Where testator devised to his wife all the income of his estate, and so much of the principal as she may think proper for her support and for the care of their incompetent son, with a power to sell, and with remainder over to trustees to support the son for life, and upon her death and that of her son remainder over to the trustees, it gives the wife only a life estate, with conditional power to her to use the principal for her support and that of her son.

2. EXECUTRIX—ACCOUNTING—RIGHTS OF LIFE TENANT.

   Remainder-men are entitled to an accounting by the life tenant and executrix where she has a right to the income and so much of the principal as is necessary for her support.

In the matter of the estate of Thomas Hunt. Motion to dismiss petition for compulsory accounting and to strike out objections. Motion denied.

Peck & Behan, for Ruth Hunt, executrix.
James Lansing, for Allen Rathbun.
Albert C. Comstock, for Ira Gifford.
Charles O. Pratt, special guardian for Chauncey Hunt.

HEATON, S. Proceeding for a compulsory accounting of Ruth Hunt, as executrix of the will of Thomas Hunt, deceased, and proceeding for voluntary accounting by such executrix. Motion to dismiss the petition for compulsory accounting and to strike out the objections to the voluntary account on the ground that Ira Gifford and Allen Rathbun, petitioners and objectors, are not persons interested in the estate of Thomas Hunt, deceased. The determination of this motion calls for a construction of the will of Thomas Hunt, which is as follows:

"The last will and testament of Thomas Hunt, late of the town of Pittstown, county of Rensselaer, and state of New York. I, Thomas Hunt, for my last will and testament, provide as follows: After my funeral expenses and the debts I may justly owe at the time of my decease are paid, I give and bequeath to my wife, Ruth Hunt, the income of all my estate, both real and personal, wheresoever it may be situated or located, and as much of the principal as she thinks proper for her support, and for the care which she shall give to our son, Chauncey, with the privilege to dispose of the real estate if my wife thinks best to do so; and upon the decease of my said wife, I give such rest, residue, and remainder to Ira Gifford and Allen Rathbun, in trust to use all the income and as much of the principal as they think best for the support, maintenance, and care of my son, Chauncey, for and during his natural life in his usual way of living, with good and comfortable clothes and good and wholesome food. Upon the decease of my said son, Chauncey, if my said wife shall have been deceased, I give and bequeath all of my estate as follows: To my brother-in-law, Ira Gifford, and my nephew, Allen Rathbun, share and share alike; and I further provide that in case either of my said trustees should have died during the lifetime of my said son, Chauncey, that the share in my estate which would have been paid him shall be paid to his children, share and share alike. Lastly I nominate and appoint my wife, Ruth Hunt, executrix of this, my last will and testament, as long as she shall live, and upon her decease I appoint my said brother-in-law, Ira Gifford, and my said nephew, Allen Rathbun, executors of the said fund so above bequeathed, and trustees; hereby revoking all former wills by me made. In witness whereof I have hereunto set my hand and seal this 18th day of April in the year of our Lord one thousand eight hundred and eighty-eight.
"Thomas Hunt."

(Here follows the attestation clause.)

Thomas Hunt died November 22, 1889, leaving his widow, Ruth, the executrix, and one son, Chauncey, who was at that time and now is mentally incompetent. He left upwards of $40,000 of personal estate and a farm. Ruth Hunt, the executrix, is about 87 years of age. Mr. Hunt was a farmer, living upon his farm in the town of Pittstown, in this county. Ruth Hunt and her son, Chauncey, have continued to live in the homestead since Thomas Hunt's death. The executrix has filed her account, in which she fails to charge herself with any income from the real or personal estate of deceased, and in which she credits herself with taxes and a stated amount per year for her support and the support of her son, Chauncey, amounting in the aggregate to $26,993.84, which is deducted from the principal of the estate, thereby reducing it to $16,226.32. She claims that the

will gives her all income absolutely as her own separate property, and permits and authorizes her to charge against the corpus of the estate the taxes and such a gross sum for her support and for the care of Chauncey as she shall think proper to charge. Although she has voluntarily accounted in the manner above indicated, yet upon this argument her position has been that the correct construction of the will would give her absolutely all of the estate of her husband without restriction or limitation. On the other side it is contended that Mrs. Hunt has a life estate, with a conditional power of disposal of the corpus, limited to her comfortable support and that of the son, Chauncey, and that she should charge herself with all income received and should be credited with such expenditures as she has actually made; conceding that, if such payments exceed the income, the principal of the fund may be invaded.

The intention of the testator must prevail, provided it be consistent with the rules of law. Was it testator's intention to provide for his wife alone, and to that end give her absolutely his entire estate, real and personal? Decidedly not, for the whole plan of and thought expressed in the will reaches beyond the enrichment of his wife at the expense of his unfortunate son. More than 200 words are used in the will providing for the support and care of his wife and son, while 20 words would have been sufficient to have vested in her absolutely all his estate. It needs no argument to show that testator's one thought in making his will was to properly provide out of his abundant means for the comfortable support of his aged wife and incompetent son; a son deprived by nature of the ability to assist his mother in her declining years, or to safely administer the property, which, under other circumstances, might naturally have been expected to have become his. The force of the argument for an absolute bequest is not increased by saying that the father would trust a mother's love to provide in her own way and in her own time for the care and support of her son out of the property thus absolutely given to her. Such reasoning would make necessary a will by her of the same nature as, and which could accomplish no more than, the will which the father was making. It was not his intention to give his entire estate to his wife, and to leave her mother's love to provide for his son; but, on the contrary, the love of the husband and father, the natural protector of both wife and incompetent son, manifested itself in a will made by himself in accordance with his own ideas of his duty to both, of which duty the very act of making a sure and wise provision for their future himself, and not leaving it to another, was certainly an important part. But it is argued that he did indirectly what it is apparent he had no intention of doing directly; that he gave his wife absolutely all the income of his estate, and then directed that she be permitted to absorb all the principal of the estate by charging against such principal all taxes and any arbitrary sum yearly which she might think proper for her support and for the care which she might give Chauncey. The will does not indicate such an intention. It will not be assumed that Thomas Hunt attempted to do with his own property by subterfuge what he did not intend to do openly. The very strongest intention shown by the will is that, not only

should the widow be provided for, but that the son should not, when he lost the care of a loving mother, also lose income and principal, which would furnish him support and maintenance during his natural life in his usual way of living with good and comfortable clothes and good and wholesome food. With such positive and careful provisions for the support and care of the son, running from the beginning to the end of the will, the theory that it was the testator's intention to give all of his property to his wife would render meaningless all of the will with the exception of three or four lines. The language used by Mr. Justice Marshall in the case of Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322, very aptly applies to this case, where he says:

"The words [referring to the gift over to the son] give the remainder of the estate, after his wife's decease, to the son with as much clearness as the preceding words give the whole estate to the wife. They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife."

Having, then, ascertained the intention of the testator, let us ascertain if such intention be consistent with the rules of law. While there are no express words limiting the gift to the wife to a life estate, such limitation is distinctly implied—First, because there is given to her no power of disposal, except for the support of herself and Chauncey; and, second, because upon the decease of his wife he himself disposes of all the rest and residue in trust for the support of Chauncey, with remainder over to Ira Gifford and Allen Rathbun. Where there is a specific gift over of a prior devise, and where, after language which would import an absolute estate, there is a limitation over which would fail by a construction into an absolute estate, and in cases where there is a conditional power of disposal annexed to the gift, but with a limitation over of the rest and remainder, the limitation over is not repugnant, but the prior gift will be construed as a life estate. Terry v. Wiggins, 47 N. Y. 512; Wager v. Wager, 96 N. Y. 164; Crozier v. Bray, 120 N. Y. 366, 24 N. E. 712. There is no repugnancy in a general devise to one person in terms which would ordinarily convey the whole estate, and a subsequent provision giving the same estate to another person upon the happening of a contingent event. Such a disposition of personal property has been held valid, and the limitation over good. Terry v. Wiggins, 47 N. Y. 512; Norris v. Beyea, 13 N. Y. 273; Smith v. Van Ostrand, 64 N. Y. 278. "The provision which purports to confer upon the widow power to sell the real estate * * * is entirely inconsistent with a conscious intent to vest in her an absolute fee. To that an unrestrained power of disposition is essential and necessarily belongs." In re McClure, 136 N. Y. 238, 32 N. E. 758. We find, then, that it was not the intention of the testator to give his wife absolutely all his estate, but that his intention to make sure and adequate provision for the support of his wife and son during their lives is plainly manifested and expressed in his will; that such intention and provision has created a life estate in the widow, to which is annexed a power to use such part of the principal of the estate as she shall think proper, limited to her support and the care

of her son. Whether or not Mrs. Hunt is entitled in her own right to any surplus income, if any there be, it is not necessary now to decide. She should charge herself with the income and credit herself with all disbursements properly incurred. The petitioners and objectors, Ira Gifford and Allen Rathbun, in their individual rights as remainder-men and in their official right as ultimate executors and trustees, are persons interested in the estate of Thomas Hunt. Their standing in court was conceded by the executrix when she voluntarily called them into court to attend her accounting. They have vested rights as remainder-men and as substituted trustees named in the will. In order to require an account to be rendered, it is not necessary that there should be a party entitled to present payment. An account may be required in order to disclose the state of the fund. Estate of Lawrence (Sur.) 1 N. Y. Supp. 213; Bogart v. Van Velsor, 4 Edw. Ch. 718. Persons entitled to the remainder after a life estate are "persons interested." Campbell v. Purdy, 5 Redf. Sur. 434; In re Wood, 5 Dem. Sur. 345. The motion to dismiss the petition and strike out the objections is denied.

Motion denied.